## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF OHIO

| | |
|---|---|
| DOUG OPPENHEIMER<br>aka PHILIP DOUGLAS OPPENHEIMER, | Case No. 1:20-CV-371 |
|     **Plaintiff,** | Judge _____ |
| **v.** | |
| **CITY OF MADEIRA, OHIO,** | **COMPLAINT** |
| **and** | |
| **JOHN DOE Nos. 1 to 10,** | |
|     **Defendants.** | |

DOUG OPPENHEIMER aka PHILIP DOUGLAS OPPENHEIMER for his Complaint hereby alleges as follows:

### PARTIES

1.    Plaintiff DOUG OPPENHEIMER, who is also known as PHILIP DOUGLAS OPPENHEIMER, is a citizen of the State of Ohio and is a resident within this District.

2.    Defendant CITY OF MADEIRA, OHIO, is a municipal corporation under the laws of the State of Ohio and, pursuant to Ohio Rev. Code § 715.01, may sue and be sued.

3.    Defendants JOHN DOE Nos. 1 TO 10 are or were governmental officials in and for the CITY OF MADEIRA whose specific identity is not presently known but who undertook, directed, authorized and/or otherwise participated, in any manner, in the retaliatory actions against DOUG OPPENHEIMER and the violations of his First Amendment rights as set forth herein, including, without limitation, the filing of, or authorizing or directing the filing of, a lawsuit against DOUG OPPENHEIMER in state court (identified later herein as the *Vexatious Litigation Lawsuit*).

4.     While the specific identity of JOHN DOE Nos. 1 TO 10 will be ascertained through discovery herein, based upon information and belief, JOHN DOE Nos. 1 TO 10 may include the current or former Mayor of the City of Madeira, some or all of the current or former individual members of the Madeira City Council, the City Manager of the City of Madeira, and/or the Law Director of the City of Madeira.

5.     Additionally and/or alternatively, some or all of JOHN DOE Nos. 1 TO 10 have final policy making authority for the CITY OF MADEIRA as it concerns the retaliatory actions against DOUG OPPENHEIMER and the violations of his First Amendment rights as set forth herein, including the filing of a lawsuit against DOUG OPPENHEIMER in state court (identified later herein as the *Vexatious Litigation Lawsuit*).

6.     All actions taken by all of the Defendants herein were undertaken under color and authority of state law.

## JURISDICTION & VENUE

7.     This Court has jurisdiction pursuant to 28 U.S.C. § 1331.

8.     Venue is proper in this court pursuant to 28 U.S.C. § 1391(b), as the Defendants reside within this District, the Defendants transact business within this District and the conduct complained of occurred within this District.

## BACKGROUND FACTS

***DOUG OPPENHEIMER functions as a governmental watchdog through the exercise of his First Amendment rights of freedom of speech, freedom of the press, freedom of association and freedom to petition the government for redress***

9.     DOUG OPPENHEIMER has been a resident in the City of Madeira since 1970.

10.    Since 1970, DOUG OPPENHEIMER has been involved in the community in the City of Madeira, including serving three terms on the Madeira City Council several years ago.

11. While not having served on the Madeira City Council for several years now, DOUG OPPENHEIMER continues to have an interest in his community and its politics, including the government of the CITY OF MADEIRA.

12. For several years, DOUG OPPENHEIMER has served as a governmental watchdog over his local government of the CITY OF MADEIRA. In the view of some people, a more appropriate appellation or characterization of the activities of DOUG OPPENHEIMER made be that of gadfly, muckraking or disseminating of false propaganda.

13. Nonetheless, in furtherance of his effort to serve as a governmental watchdog and in furtherance of his First Amendment rights, DOUG OPPENHEIMER regularly attends meetings of the Madeira City Council and its committees.

14. In furtherance of his effort to serve as a governmental watchdog and in furtherance of his First Amendment rights, DOUG OPPENHEIMER regularly obtains public records of the CITY OF MADIERA through the tendering public records requests under Ohio law.

15. In furtherance of his effort to serve as a governmental watchdog and in furtherance of his First Amendment rights, DOUG OPPENHEIMER publishes on the internet a website entitled *Madeira Messenger*, having the homepage of www.madeiramessenger.com.

16. The publication of *Madeira Messenger* by DOUG OPPENHEIMER is undertaken in an effort to add to the marketplace of ideas regarding the government of the CITY OF MADEIRA.

17. DOUG OPPENHEIMER has been publishing the *Madeira Messenger* since 2015.

18. As stated in the introductory pages of the website for *Madeira Messenger*, "[t]his news site was created for the purpose of providing information that may not be provided in other news venues."

19. Laid out by subject matters on distinct webpages, *Madeira Messenger* provides

information on various subjects in and relating to the community, including historical information about the City of Madeira, businesses in the City of Madeira, Madeira Police & Fire information, and, most significantly, the government and politics in the City of Madeira.

20. Not limiting the reporting or summarizing of information from the perspective of DOUG OPPENHEIMER, *Madeira Messenger* also provides the public the ability to review and assess the underlying documents or records for themselves. Such records or documents include public records obtained from the CITY OF MADEIRA or from other sources (such as court filings), and audio recordings made by DOUG OPPENEHIMER of meetings of the Madeira City Council and its committees.

21. At times, though, the information reported in *Madeira Messenger* is highly critical of the governmental officials of the CITY OF MADEIRA.

22. The criticism published by DOUG OPPENHIMER in the *Madeira Messenger* has caught the attention and raised the ire of various governmental officials with the CITY OF MADEIRA, including JOHN DOES Nos. 1 TO 10.

23. As an additional part of his effort to serve as a governmental watchdog, DOUG OPPENHEIMER also seeks to ensure that the CITY OF MADEIRA and its governmental officials, including JOHN DOES Nos. 1 TO 10, comply with the law and do not exceed the authority given to them under Ohio law or the Madeira City Charter.

24. One means provided for under Ohio law by which taxpayers may ensure and compel municipalities and their governmental officials to comply with the law and to not exceed the authority given to them under Ohio law or the Madeira City Charter is through a process known as a taxpayer lawsuit.

25. Founded and based in the common law, a taxpayer lawsuit essentially provides that "a

taxpayer has a right to call upon a court of equity to interfere to prevent the consummation of a wrong such as occurs when public officers attempt to make an illegal expenditure of public money, or to create an illegal debt, which he, in common with other property holders of the taxing district, may otherwise be compelled to pay." *State ex rel. Masterson v. Ohio State Racing Comm'n*, 162 Ohio St. 366, 369, 123 N.E.2d 1 (1954).

26.    In Ohio, the General Assembly has enacted a statutory scheme by which a taxpayer in a municipal corporation may also bring an action to guard against and prevent, *inter alia*, "the misapplication of funds of the municipal corporation, the abuse of its corporate powers, or the execution or performance of any contract made in behalf of the municipal corporation in contravention of the laws or ordinance[s] governing it, or which was procured by fraud or corruption."  Ohio Rev. Code § 733.56.

27.    Under the statutory scheme, before a taxpayer may initiate such a taxpayer action, a written request must be made by the taxpayer upon the village solicitor or city law director to bring the appropriate type of action to address and remedy the alleged misapplication of funds of the municipal corporation, the alleged abuse of its corporate powers, or the alleged execution or performance of any contract made in behalf of the municipal corporation in contravention of the laws or ordinances governing it, or which was procured by fraud or corruption.

28.    If, upon such written demand being tendered, the village solicitor or city law director fails or refuses to bring such an action, then the taxpayer is enabled to bring such an action on behalf of and in the name of the municipal corporation.  *See* Ohio Rev. Code § 733.59.

29.    "[T]he city is the real party in interest in a taxpayer lawsuit."  *Laituri v. Nero*, 2001-Ohio-230, 138 Ohio App.3d 348, 351, 741 N.E.2d 228 (11th Dist. 2000).

30.    On a few occasions, DOUG OPPENHEIMER has sought to vindicate the public

- 5 -

interest and prevent the abuse of the corporate powers by governmental officials with the CITY OF MADEIRA and, following the procedure set forth in Ohio Rev. Code § 733.56 *et seq.*, brought taxpayer actions on behalf of the CITY OF MADEIRA after his written demands for such actions were rejected by the Law Director for the CITY OF MADEIRA.

31.   "Suing a municipality is a form of petitioning the government for a redress of grievances and is thus protected by the First Amendment." *O'Boyle v. Sweetapple*, 187 F.Supp.3d 1365, 1370 (S.D. Fla. 2016); *accord In re Lipitor Antitrust Litigation*, 868 F.3d 231, 272 (3d Cir. 2017)("[f]iling a lawsuit essentially petitions the government for redress").

32.   "Retaliation by public officials against the exercise of First Amendment rights is itself a violation of the First Amendment." *Zilich v. Longo*, 34 F.3d 359, 364 (6th Cir. 1994); *accord R.S.W.W., Inc. v. City of Keego Harbor*, 397 F.3d 427 (6th Cir. 2005)("[t]o the extent that Goose Island alleges that government officials retaliated against it for accessing the courts, that claim arises under the First Amendment").

33.   Thus, bringing statutory taxpayer actions and other civil actions against a municipal corporation, including the CITY OF MADEIRA, is a form of petitioning the government for a redress of grievances and is protected by the First Amendment.

### *The CITY OF MADEIRA and its governmental officials take offense to DOUG OPPENHEIMER fully exercising his First Amendment rights and then proceed to retaliate against him for exercising his First Amendment rights*

34.   The CITY OF MADEIRA and its governmental officials, including JOHN DOE Nos. 1 to 10, have taken strong offense and objection to the efforts of DOUG OPPENHEIMER to serve as a governmental watchdog and critic – be it through Mr. OPPENHEIMER publishing *Madeira Messenger* or the suing of the CITY OF MADEIRA.   Such public criticism against Mr. OPPENHEIMER has included attacking him for his use of Ohio law to obtain public records from

the CITY OF MADEIRA and his filing of a taxpayer lawsuit that he has brought on behalf of the CITY OF MADEIRA against the CITY OF MADEIRA and its governmental officials, including, some or all of JOHN DOES Nos. 1 to 10.

35.    In fact, the CITY OF MADEIRA has undertaken the effort of tracking the public record request submitted by DOUG OPPENHEIMER and the amount of employee time it supposedly needed or consumed to respond to the public records requests submitted by DOUG OPPENHEIMER.

36.    Based upon information and belief, the CITY OF MADEIRA has not and does not track the amount of employee time supposedly needed or consumed to respond to public record requests submitted by any person other than DOUG OPPENHEIMER.

37.    Thus, based upon information and belief, the CITY OF MADEIRA and JOHN DOE Nos. 1 to 10 desire and have sought ways to silence DOUG OPPENHEIMER in his criticism of them.

38.    Based upon information and belief, one way identified or developed by the CITY OF MADEIRA and/or JOHN DOE Nos. 1 TO 10 to silence DOUG OPPENHEIMER in his criticism of them was to subject DOUG OPPENHEIMER to litigation and the attended expenses of defending such litigation.

39.    Specifically, based upon information and belief, one specific method or means by which the CITY OF MADEIRA and/or JOHN DOE Nos. 1 TO 10 sought to retaliate against DOUG OPPENHIMER for his criticism of them was to subject DOUG OPPENHEIMER to the additional costs and harassment of defending against a lawsuit filed by the CITY OF MADEIRA so as to have DOUG OPPENHEIMER declared a "vexatious litigator".

40.    Based upon information and belief, one specific method or means by which the CITY

OF MADEIRA and/or JOHN DOE Nos. 1 TO 10 sought to silence DOUG OPPENHEIMER in his criticism of them was to subject DOUG OPPENHEIMER to the additional costs and harassment of defending against a lawsuit filed by the CITY OF MADEIRA to have DOUG OPPENHEIMER declared a "vexatious litigator".

41.    Under Ohio law, a person may be declared a "vexatious litigator" if he or she "has habitually, persistently, and without reasonable grounds engaged in vexatious conduct in a civil action or actions." Ohio Rev. Code § 2323.52(A)(3). In turn, "vexatious conduct" is defined statutorily as "conduct of a party in a civil action that….obviously serves merely to harass or maliciously injure another party to the civil action…[or] is not warranted under existing law and cannot be supported by a good faith argument for an extension, modification, or reversal of existing law … [or] is imposed solely for delay."  Ohio Rev. Code § 2323.52(A)(2).  And "conduct" is further defined statutorily as either "[t]he filing of a civil action, the assertion of a claim, defense, or other position in connection with a civil action, the filing of a pleading, motion, or other paper in a civil action, including, but not limited to, a motion or paper filed for discovery purposes, or the taking of any other action in connection with a civil action [or] [t]he filing by an inmate of a civil action or appeal against a government entity or employee, the assertion of a claim, defense or other position in connection with a civil action of that nature or the assertion of issues of law in an appeal of that nature, or the taking of any other action in connection with a civil action or appeal of that nature."  Ohio Rev. Code § 2323.52(A)(1); Ohio Rev. Code § 2323.51(A)(1).

42.    The designation of a person as a vexatious litigator designation has been described as "an extraordinary remedy that should be applied in very limited circumstances" and only upon "clear and convincing evidence".  *Lasson v. Coleman*, 2008-Ohio-4140 ¶33 (2d Dist.).

43.    Having identified or developed the plan to retaliate against and to silence DOUG

OPPENHEIMER in his criticism of the CITY OF MADEIRA and JOHN DOE Nos. 1 to 10, a lawsuit was filed on behalf of the CITY OF MADEIRA on May 14, 2018, against DOUG OPPENHEIMER in the Hamilton County Common Pleas Court, styled *City of Madeira v. Philip Douglas Oppenheimer* and assigned Case No. A-18-02415 (the "*Vexatious Litigation Lawsuit*")

44.     A true and accurate copy of the *Complaint* filed in the *Vexatious Litigation Lawsuit* is attached hereto as Exhibit A.

45.     Subsequently, the CITY OF MADEIRA filed an *Amended Complaint* against DOUG OPPENHIMER in the *Vexatious Litigation Lawsuit*.

46.     A true and accurate copy of the *Amended Complaint* filed in the *Vexatious Litigation Lawsuit* is attached hereto as Exhibit B.

47.     Some or all of JOHN DOE Nos. 1 TO 10 authorized or directed the filing of the *Vexatious Litigation Lawsuit* though did so other than at a public meeting of the Madeira City Council.

48.     Specifically, and/or alternatively, based upon information and belief, the Madeira City Council authorized or directed the filing of the *Vexatious Litigation Lawsuit* though did so other than at a public meeting of the Madeira City Council.

49.     Specifically, and/or alternatively, based upon information and belief, the City Manager of the CITY OF MADEIRA authorized or directed the filing of the *Vexatious Litigation Lawsuit*.

50.     Specifically, and/or alternatively, based upon information and belief, the Law Director of the CITY OF MADEIRA authorized or directed the filing of the *Vexatious Litigation Lawsuit*.

51.     Based upon information and belief, subjecting DOUG OPPENHEIMER to litigation and the attended expenses of defending such litigation, including litigation seeking to have DOUG OPPENHEIMER declared a "vexatious litigator" through the initiation of the *Vexatious Litigation*

*Lawsuit*, was undertaken in retaliation for DOUG OPPENHIMER criticizing the CITY OF MADEIRA, including JOHN DOE Nos. 1 TO 10, through *Madeira Messenger* and otherwise.

52. Based upon information and belief, subjecting DOUG OPPENHEIMER to litigation and the attended expenses of defending such litigation, including litigation seeking to have DOUG OPPENHEIMER declared a "vexatious litigator" through the initiation of the *Vexatious Litigation Lawsuit*, was undertaken in retaliation for DOUG OPPENHIMER tendering what the CITY OF MADEIRA, including JOHN DOE Nos. 1 TO 10, viewed as an excessive number of public records requests from the CITY OF MADEIRA.

53. Based upon information and belief, subjecting DOUG OPPENHEIMER to litigation and the attended expenses of defending such litigation, including litigation seeking to have DOUG OPPENHEIMER declared a "vexatious litigator" through the initiation of the *Vexatious Litigation Lawsuit* was undertaken in retaliation for DOUG OPPENHIMER filing public interest lawsuits (including a taxpayer lawsuit) against the CITY OF MADEIRA and/or JOHN DOE Nos. 1 TO 10.

54. Based upon information and belief, subjecting DOUG OPPENHEIMER to litigation and the attended expenses of defending such litigation, including litigation seeking to have DOUG OPPENHEIMER declared a "vexatious litigator" through the initiation of the *Vexatious Litigation Lawsuit*, was undertaken in retaliation for DOUG OPPENHIMER exercising his First Amendment rights.

### The Vexatious Litigation Lawsuit was brought to retaliate against DOUG OPPENHEIMER for exercising his First Amendment rights

55. The focus and raison d'être of bringing the *Vexatious Litigation Lawsuit* is based upon the exercise of First Amendment rights by DOUG OPPENHEIMER is revealed, in part, by the *Complaint* filed on behalf of the CITY OF MADEIRA in the *Vexatious Litigation Lawsuit*.

56. The *Complaint* in the *Vexatious Litigation Lawsuit* leads off with paragraph after

paragraph identifying a plethora of speech or publications of DOUG OPPENHEIMER but which

the CITY OF MADEIRA and/or JOHN DOE Nos. 1 to 10, including other governmental officials

of the CITY OF MADEIRA, found objectionable, offensive or even false:

a. paragraph 7 of the *Complaint* in the *Vexatious Litigation Lawsuit* references "Mr. Oppenheimer's personal website and social media activity";

b. paragraph 8 of the *Complaint* in the *Vexatious Litigation Lawsuit* decries "the defamatory nature of [Mr. Oppenheimer's] writings";

c. paragraph 9 of the *Complaint* in the *Vexatious Litigation Lawsuit* sets forth 13 different categories of Mr. Oppenheimer's public and published allegations against governmental officials of the CITY OF MADEIRA, including, based upon information and belief, some or all of JOHN DOE Nos. 1 to 10;

d. paragraph 10 of the *Complaint* in the *Vexatious Litigation Lawsuit* complains that governmental officials of the CITY OF MADEIRA, including, based upon information and belief, some or all of JOHN DOE Nos. 1 to 10, have "been the subject of Mr. Oppenheimer's harassment and vicious attacks";

e. paragraph 11 of the *Complaint* in the *Vexatious Litigation Lawsuit* decries DOUG OPPENHEIMER "lobbying" concerning public matters in the CITY OF MADEIRA;

f. paragraph 11 of the *Complaint* in the *Vexatious Litigation Lawsuit* takes issues with DOUG OPPENHEIMER's characterization, *i.e.,* protected core political speech, concerning decisions by governmental officials with the CITY OF MADEIRA

57. The *Complaint* in the *Vexatious Litigation Lawsuit* then includes as 12 separate exhibits

copies of numerous publications contained in *Madeira Messenger*, as well as a letter written to

one of the members of the Madeira City Council concerning public business of the CITY OF

MADEIRA.

58. The publication of *Madeira Messenger* and corresponding with a governmental official

on matters of governmental business are core political speech afforded penultimate protection

under the First Amendment, including protection from retaliation.

59. Under the guise of having DOUG OPPENHEIMER declared to be a vexatious

litigation through the *Vexatious Litigation Lawsuit*, the CITY OF MADEIRA and JOHN DOE

Nos. 1 TO 10 have done so in retaliation for DOUG OPPENHEIMER's exercise of his First Amendment rights of free speech, freedom of the press, and freedom to petition the government for redress of grievances.

60.     The factual and legal basis of the CITY OF MADEIRA in bringing and prosecuting the *Vexatious Litigator Lawsuit* against DOUG OPPENHEIMER was without merit when applied against the legal standard by which a person might be considered a vexatious litigator.

61.     Within the *Vexatious Litigation Lawsuit*, the CITY OF MADEIRA identified two lawsuit and one administrative appeal which it contended demonstrated, by clear and convincing evidence, that DOUG OPPENHEIMER "has habitually, persistently, and without reasonable grounds engaged in vexatious conduct in a civil action or actions" and, thus, the extreme measure of having him declared a vexatious litigator should issue.

62.     The entire legal premise repeatedly posited by the CITY OF MADEIRA in the *Vexatious Litigation Lawsuit* as to why the two lawsuits and one administrative appeal upon which it relied rose to the level to warrant the extreme measure of having DOUG OPPENHEIMER declared a vexatious litigator was simply that DOUG OPPENHEIMER did not prevail in those three actions.  In fact, the CITY OF MADEIRA declared that "the most salient fact" to support its contention that DOUG OPPENHEIMER was a vexatious litigator was that "[a]ll of these cases were dismissed. There is no greater testament to their frivolousness than that."

63.     But as the Ohio Supreme Court declared, when it refused to declare a person a vexatious litigator even when confronted with the prospective vexatious litigator having filed "numerous cases, including six in [the Supreme Court], that were all unsuccessful and 'readily deemed to be frivolous'", "[s]imply filing a losing case or appeal is not automatically 'frivolous'." *State ex rel. Bunting v. Styer*, 147 Ohio St.3d 462, 67 N.E.3d 755, 2016-Ohio-5781 ¶¶6&7.

64.    Instead, the concept of a vexatious litigator is targeted towards litigants who file or pursue the same arguments and theories after such arguments or theories have been soundly rejected by a court and without a reasonable argument for the modification of existing law.  *See Caghan v. Caghan*, 2015-Ohio-1787 ¶83 (5th Dist.)("[g]iven the purpose and design of the vexatious-litigator statute, it makes sense that 'the consistent repetition of arguments and legal theories that have been rejected by the trial court numerous times can constitute vexatious litigation' (quoting *Farley v. Farley*, 2003-Ohio-3185 ¶46 (10th Dist.))).

65.    None of the three legal actions which the CITY OF MADEIRA asserted in the *Vexatious Litigation Lawsuit* demonstrated, by clear and convincing evidence, that DOUG OPPENHEIMER satisfied the statutory criteria to be declared a vexatious litigation involved matters wherein DOUG OPPENHEIMER was making consistent repetition of arguments and legal theories that had been rejected numerous times by the trial court or otherwise.

### *The Vexatious Litigation Lawsuit lacked any legitimate legal basis to warrant the extreme measure of having one declared a vexatious litigator*

66.    When consideration is given to the law and the facts, the allegations in the *Vexatious Litigation Lawsuit* lacked any legitimate legal basis to warrant the extreme measure of having one declared a vexatious litigator.

67.    In the *Complaint* in the *Vexatious Litigation Lawsuit,* CITY OF MADEIRA identified an administrative appeal captioned *Robert McCabe Co. v. City of Madeira*, Hamilton County Common Pleas Court, Case No. A-16-06293 (the "*Administrative Appeal*") and filed by legal counsel not only on behalf of Mr. OPPENHEIMER, but also on behalf of The Robert McCabe Company, Inc., and Woellner Enterprises, LLC, as supporting and warranting the extreme measure of having DOUG OPPENHEIMER declared a vexatious litigator, though, doing so, lacked any

legitimate legal basis in law and in fact.

68.    As a matter of law through statutory definitions and of what constitutes "vexatious conduct", the *Administrative Appeal* identified in the *Vexatious Litigation Lawsuit* as constituting vexatious conduct on the part of DOUG OPPENHEIMER could not support and warrant the extreme measure of having DOUG OPPENHEIMER being declared a vexatious litigator.

69.    A simple review of the statutory definitions involved and the application of basic principles of statutory construction lead to the clear recognition, as a matter of law, that an administrative appeal does not and cannot constitute "vexatious conduct" on the part of DOUG OPPENHEIMER.

70.    Under the vexatious litigator statute, Ohio Rev. Code § 2323.52, the criteria as to what actually constitutes "vexatious conduct" to support a claim against someone as a vexatious litigator are statutorily and unambiguously defined. *See* Ohio Rev. Code § 2323.52(A)(2)(statutorily defining "vexatious conduct" as being "conduct" of a party in a civil action that satisfies one of three criteria). And, in turn, the term "conduct" as used in the definition of "vexatious conduct" is likewise statutorily defined. *See* Ohio Rev. Code § 2323.52(A)(1)("conduct" statutorily defined as having "the same meaning as in section 2323.51 of the Revised Code"). Thus, only actions satisfying the definition of "conduct" as used Ohio Rev. Code § 2323.51 may serve as a basis for alleging "vexatious conduct" against a person.

71.    Under Ohio Rev. Code § 2323.51(A)(1)(b), two distinct types of legal proceedings are identified as within the ambit of "conduct" when undertaken by an inmate: (i) a "civil action"; and (ii) an "appeal against a government entity or employee". In contrast, under Ohio Rev. Code § 2323.51(A)(1)(a), only one of those two distinct types of legal proceedings are included in the statutory definition of "conduct" applied to a person other than an inmate, *i.e,* a civil action. Thus,

a "civil action" cannot be the same thing as an "appeal against a government entity or employee"; they are separate and distinct legal proceedings, less the latter be redundant or surplusage or as used in Ohio Rev. Code § 2323.51(A)(1)(b). *See D.A.B.E., Inc. v. Toledo-Lucas Cty. Bd. of Health*, 96 Ohio St.3d 250, 773 N.E.2d 536, 2002-Ohio-4172 ¶26 (one rule of statutory construction requires that words in statutes should not be construed to be redundant, nor should any words be ignored so that no part is treated as superfluous)

72.     Notwithstanding this basic and self-evident analysis of what constitute "conduct" pursuant to the statutory definitions, the CITY OF MADEIRA asserted the position in the *Vexatious Litigation Lawsuit* that the filing by legal counsel on behalf of DOUG OPPENHEIMER of the *Administrative Appeal* constituted "vexatious conduct". But because an "appeal against a government entity or employee" is not within the statutory definition of "conduct" potentially applicable to DOUG OPPENHEIMER and, as such, is not within the statutory definition of "vexatious conduct", the identification of the *Administrative Appeal* as a basis to support a claim of vexatious litigator lacked any basis in law and in fact.

73.     Thus, reliance by the CITY OF MADEIRA in the *Vexatious Litigation Lawsuit* upon the *Administrative Appeal* to warrant the extreme measure of having DOUG OPPENHEIMER declared a vexatious litigator lacked any legitimate legal basis in law and in fact.

74.     Additionally, with respect to another one of the three actions the CITY OF MADEIRA identified in the *Vexatious Litigation Lawsuit* as constituting vexatious conduct on the part of DOUG OPPENHEIMER, the CITY OF MADEIRA in that underlying action acknowledged the existence of a *bona fide* legal dispute and, thus, relying upon such an action to support a claim of vexatious litigator lacked any basis in law and in fact.

75.     In the *Complaint* in the *Vexatious Litigation Lawsuit,* the CITY OF MADEIRA also

identified a lawsuit filed in the Hamilton County Common Pleas Court with the caption of *City of Madeira ex rel. Oppenheimer v. City of Madeira*, and assigned case no. A-15-06891 ("*Lawsuit No. 1*"), as also supporting and warranting the extreme measure of having DOUG OPPENHEIMER declared a vexatious litigator, though, doing so, lacked any legitimate legal basis in law and in fact.

76.    A statutory taxpayer lawsuit brought on behalf of the CITY OF MADEIRA itself and in which Mr. OPPENHEIMER simply served as the relator represented by legal counsel, *Lawsuit No. 1* concerned a dispute over the interpretation of a provision of the Madeira City Charter that required certain historical properties owned by the City to be "preserved [and] protect[ed]".

77.    The dispute in *Lawsuit No. 1* arose due to the prospective sale by the CITY OF MADEIRA of a portion of one of those historic properties.  Thus, the complaint in *Lawsuit No. 1* simply sought a declaratory judgment as to the legal meaning of the pertinent charter provision and, based upon that declaratory judgment, an injunction against the prospective sale proceeding forward.

78.    In response to the complaint in *Lawsuit No. 1*, the CITY OF MADEIRA actually filed a counterclaim wherein the CITY OF MADEIRA also sought a declaratory judgment concerning its authority under the charter provision, expressly asserting in its counterclaim:

> A real and justiciable dispute exists between the parties regarding the rights, status and other legal relationship arising from the foregoing facts.  [The City of Madeira and its city manager] seek a declaratory judgment regarding said rights, status and other legal relations, including a declaratory judgment that they have every right under the law to proceed with the sale of a vacant portion of [its] [historic properties].

79.    Later in *Lawsuit No. 1*, the CITY OF MADEIRA doubled down on the existence of a justiciable dispute concerning the meaning of the provision in the Madeira City Charter and the

need for clarification from the court. Specifically, the CITY OF MADEIRA declared that it, as well as the City Manager of the City of Madeira, were:

> seeking a declaration as to what rights [it] [has] to convey the small portion of vacant land at issue in this case and their rights with regard to the subject properties located within the historical areas…
> There is a justiciable controversy between the parties.

80.     When the prospective sale by the CITY OF MADEIRA of a portion of one of the historic properties at issue in *Lawsuit No. 1* failed to proceed forward, legal counsel for the CITY OF MADEIRA still argued in *Lawsuit No. 1* for a declaratory judgment as to the meaning of the City Charter, stating to the Court during oral argument:

> we would still argue there is controversy here because this is something that is capable of repetition.  We have the feeling we will be back in court, even if the City were to try to sell these [properties in the historic district]…
> …
> So, in terms of relief, Judge, we do believe we are here properly….  [S]o we maintain declaratory judgment can be rendered now as a matter of law for the City of Madeira.

81.     And at that same oral argument, in response to an inquiry from the Court, legal counsel for the CITY OF MADEIRA continued to advocate for the issuance of a declaratory judgment as to the meaning of the City Charter because there was a legitimate dispute as to the meaning of the Charter:

> The City's concern is this, is that the issue underlying it, though, is one that is capable of repetition.  It is kind of an exception to the mootness doctrine via the standard of the Ohio and Federal law that if you have a situation, that appellate review, court review is capable of repetition, this is a classic case.
>
> Our understanding, Judge, is if they ever tried to sell one of these pieces of land again, we will be right back in front of this Court or another court on the exact same issue, which is, does Article 16 prohibit public ownership.
>
> *So we are, essentially, Judge, trying to call the question*.  We believe that we found this exception to the mootness doctrine that allows us to do that.
>
> Our view was that, later it was moved for declaratory judgment so, therefore, declaratory judgment could be appropriate either way under the Ohio law, so that's

- 17 -

what we are trying to do here, Judge.

So in terms of, the Court is absolutely correct, the contract really at issue is gone. *We believe there is a broader issue as to whether another contract could be entered into. And that's what we are asking the Court, in its discretion, to take up.*

…

The way we see it, Judge, under Ohio law, the Court has two choices, or three choices. One would be to rule for the relator and issue declaratory judgment saying that there is some sort of public ownership, people are required to comply here, which we strongly disagree with.

Secondarily, the Court could find the matter to be moot because the contract is dead and simply dismiss the case.

Or, third, we could issue a declaratory judgment in Madeira's favor saying that there is no public ownership requirement and dismiss the case that way. So we think there are really three paths under Ohio law the Court could go down.

82. Thus, reliance by the CITY OF MADEIRA in the *Vexatious Litigation Lawsuit* upon *Lawsuit No. 1* to warrant the extreme measure of having DOUG OPPENHEIMER declared a vexatious litigator lacked any legitimate legal basis in law and in fact.

83. Additionally, the third action the CITY OF MADEIRA identified in the *Vexatious Litigation Lawsuit* as supporting a claim of vexatious conduct on the part of DOUG OPPENHEIMER was not so baseless such that relying upon such action to support a claim of vexatious litigator lacked any basis in law and in fact.

84. In the *Complaint* in the *Vexatious Litigation Lawsuit,* CITY OF MADEIRA also identified a lawsuit filed in the Hamilton County Common Pleas Court with the caption of *City of Madeira ex rel. Oppenheimer v. City of Madeira*, and assigned case no. A-17-02034 ("*Lawsuit No. 2*"), as also supporting and warranting the extreme measure of having DOUG OPPENHEIMER declared a vexatious litigator, though, doing so, lacked any legitimate legal basis in law and in fact.

85. A statutory taxpayer lawsuit brought on behalf of the CITY OF MADEIRA itself and

in which Mr. OPPENHEIMER simply served as the relator, *Lawsuit No. 2* sought judicial review of the decision of the Hamilton County Board of Election over the placement of proposed charter amendments on the ballot at the then-forthcoming election, as well as the validity of the underlying ordinance to place such proposed amendments on the ballot and the City's compliance *vel non* of mailing notice to each resident.

86. Prior to the filing of *Lawsuit No. 2*, the Hamilton County Board of Elections had rejected the protest that had been filed. The gist of the protest concerned the validity of the ordinances authorizing the placement of the proposed charter amendments on the ballot as presented to the Board of Elections by the CITY OF MADEIRA. As there is no direct appeal from a decision of a board of elections, *State ex rel. Holwadel v. Hamilton County Bd. of Elec.,* 2015-Ohio-87 ¶3 (1st Dist.)("[a] board of elections decision is not subject to an administrative appeal because the board is not a political subdivision for purposes of R.C. Chapter 2506"), *Lawsuit No. 2* sought judicial review of the decision of the Board of Elections, as well as whether the CITY OF MADEIRA complied with other municipal and state ordinances, through a declaratory judgment and injunctive action.

87. Mr. OPPENHEIMER based *Lawsuit No. 2*, in part, upon another case he had previously filed against the CITY OF MADEIRA that also involved a similar issue of compliance *vel non* with the requirement to mail notice of the proposed charter amendment to residents and wherein the Court found the CITY OF MADEIRA violated the law and, even though the election had already occurred, invalidated the election results. *See Oppenheimer v. City of Madeira*, 1 Ohio App.3d 44, 439 N.E.2d 440 (1st Dist. 1981)("[Mr. Oppenheimer] was, as a matter of law, entitled to judgment in his favor prior to the election, and the only method now available to give him the relief to which he was then entitled is to invalidate the vote on this issue. We reverse the decision

of the Court of Common Pleas of Hamilton County and hereby declare that the vote on the proposed amendment to the Charter of the city of Madeira, as contained in Ordinance No. 1420, held on November 6, 1979, and the results thereof, are a nullity and without effect").

88.     Thus, reliance by the CITY OF MADEIRA in the *Vexatious Litigation Lawsuit* upon the *Lawsuit No. 2* to warrant the extreme measure of having DOUG OPPENHEIMER declared a vexatious litigator lacked any legitimate legal basis in law and in fact.

### *The discovery efforts by the CITY OF MADEIRA in the Vexatious Litigation Lawsuit further demonstrates the filing of the Vexatious Litigation Lawsuit was undertaken as a subterfuge to further impede upon and retaliate against DOUG OPPENHEIMER*

89.     Beyond the lack of any legitimate basis in law and in fact to support the *Vexatious Litigation Lawsuit,* the discovery efforts undertaken by the CITY OF MADEIRA in the *Vexatious Litigation Lawsuit* further demonstrates the use of the *Vexatious Litigation Lawsuit* to retaliate against DOUG OPPENHEIMER for the exercise of his First Amendment rights, as well as a concerted effort to further intimidate him in the exercise of his First Amendment rights, including the freedom of association.

90.     During the course of the *Vexatious Litigation Lawsuit*, the CITY OF MADEIRA tendered written discovery requests upon DOUG OPPENHEIMER (the "*Discovery Requests*").

91.     A true and accurate copy of the *Discovery Requests* tendered by the CITY OF MADEIRA in the *Vexatious Litigation Lawsuit* is attached hereto as Exhibit C.

92.     The *Discovery Requests* generally go not to the merits of the claims in the *Vexatious Litigation Lawsuit* but, instead, directly towards prying into DOUG OPPENHEIMER's exercise of his First Amendment rights of freedom of speech, freedom to petition government for redress of grievances, freedom of association and freedom of the press, thereby seeking to chill or stifle the full and robust exercise of such rights.

93. Based upon information and belief, the *Discovery Requests* were designed to retaliate against DOUG OPPENHEIMER for the exercise of his First Amendment rights of freedom of speech, freedom to petition government for redress of grievances, freedom of association and freedom of the press.

94. Based upon information and belief, the *Discovery Requests* were designed to inhibit or impede DOUG OPPENHEIMER from the further exercise of his First Amendment rights of freedom of speech, freedom to petition government for redress of grievances, freedom of association and freedom of the press.

95. The *Discovery Requests* demonstrating the retaliatory nature of the bringing and prosecution of the *Vexatious Litigation Lawsuit,* as well as the effort to further intimidate DOUG OPPENHEIMER in the exercise of his First Amendment rights of freedom of speech, freedom to petition government for redress of grievances, freedom of association and freedom of the press include:

   a. Identify each lawyer you contacted regarding a potential lawsuit against Madeira from January 1, 2010 to the present, being sure to include the date(s) of such contact. *Interrogatory No. 5 in the Discovery Requests (Exhibit C attached hereto).*

   b. Identify all lawsuits against Madeira for which you provided plaintiff(s) or his or her attorneys information, consultation, or advice but to which you were not formally named as a party. *Interrogatory No. 8 in the Discovery Requests (Exhibit C attached hereto).*

   c. Identify all individuals to whom you provided information, consultation, or advice for a potential lawsuit against Madeira (without regard to whether such lawsuit was ultimately instituted), being sure to include the subject matter of the information, consultation, or advice and the date it was provided by you. *Interrogatory No. 9 in the Discovery Requests (Exhibit C attached hereto).*

   d. Identify each individual whom you ever encouraged to institute a lawsuit against Madeira without regard to whether a lawsuit was ever instituted, being sure to include the date and means by which such encouragement was communicated. *Interrogatory No. 15 in the Discovery Requests (Exhibit C attached hereto).*

   e. Identify all media outlets with whom you have communicated about any

information relating to Madeira, being sure to include the date, form, and subject matter of the communication. *Interrogatory No. 16 in the Discovery Requests (Exhibit C attached hereto).*

f.   Identify every instance you have publicly accused Tom Moeller in writing of some form of fraudulent conduct, being sure to list the date and form of publication. *Interrogatory No. 17 in the Discovery Requests (Exhibit C attached hereto).*

g.   Identify all individuals holding any position in Madeira government, including but not limited to Madeira employees, councilmembers, officials, and staff, whom you have accused of fraud. *Interrogatory No. 18 in the Discovery Requests (Exhibit C attached hereto).*

h.   Identify all individuals holding any position in Madeira government, including but not limited to Madeira employees, councilmembers, officials, and staff, whom you have accused of engaging in any form of illegal conduct at some point in the last twenty years, being sure to state the nature of the illegal conduct and the date of your accusation. *Interrogatory No. 19 in the Discovery Requests (Exhibit C attached hereto).*

i.   Identify all contributors to www.MadeiraMessenger.com. *Interrogatory No. 21 in the Discovery Requests (Exhibit C attached hereto).*

j.   Identify all financial contributions to you for the purposes of operating or publishing on your website from any individual or entity, being sure to identify the date, the amount, and the contributor. *Interrogatory No. 22 in the Discovery Requests (Exhibit C attached hereto).*

k.   Identify all lawsuits in which you were involved in any way (such as through the contribution of money, advice, information, or consultation) without regard to whether you were formally named as a party, being sure to include the filing date, county, case number and the nature of your involvement. *Interrogatory No. 24 in the Discovery Requests (Exhibit C attached hereto).*

l.   Produce copies of all communications, including, but not limited to emails and text messages, between You and [Mr. Todd Woellner, Mr. Jim Tepe, or any third party] concerning or relating to Mr. Thomas M. Powers, the B&B Mower property located at 7710 Railroad Avenue, Cincinnati, Ohio, and/or the development project for a restaurant known as the "Swingline Grill." *Document Requests Nos. 2-4 in the Discovery Requests (Exhibit C attached hereto).*[1]

m.   Produce copies of all communications, including, but not limited to emails and text

---

[1]   DOUG OPPENHEIMER was an outspoken critic at meetings of the Madeira City Council and otherwise of the Swingline Grill development project. This challenge to the proposed project placed him in direct opposition to the strong support of the project by councilmembers and officials with the CITY OF MADEIRA.

messages, between You and [Mr. Todd Woellner, Mr. Jim Tepe, or any third party] concerning or relating to alleged fraud or collusion committed by City Manager Thomas Moeller, Madeira City Council members (whether past and present), and other elected or appointed Madeira public servants. *Document Requests Nos. 5-7 in the Discovery Requests (Exhibit C attached hereto).*

n.   Produce copies of every public records request You have submitted to Madeira. *Document Requests No. 14 in the Discovery Requests (Exhibit C attached hereto).*

o.   Produce all drafts of any content published by You on www.MadeiraMessenger.com. *Document Requests No. 15 in the Discovery Requests (Exhibit C attached hereto).*

96.   And the effort to retaliate, harass and intimidate DOUG OPPENHEIMER for the exercise of his First Amendment rights of freedom of speech, freedom to petition government for redress of grievances, freedom of association and freedom of the press, and to further intimidate him in the exercise of such First Amendment rights, is further revealed through a comment in the *Discovery Requests* left by legal counsel for the CITY OF MADEIRA with respect to the discovery request to:

Produce copies of tax bills You have received from Madeira

*Document Requests No. 13 in the Discovery Requests (Exhibit C attached hereto).*

97.   In a comment attached to the electronic version of the document tendering the *Discovery Requests*, counsel for the CITY OF MADEIRA included an aside comment explaining the request to receive copies of all of DOUG OPPENHEIMER's tax bills he had received from Madeira with the statement: "My thought with this one is that he has filed a number of taxpayer lawsuits, and he barely pays taxes."

98.   Accordingly, the *Discovery Requests* tendered to DOUG OPPENHEIMER in the *Vexatious Litigation Lawsuit* was part of a continuation of the effort by the CITY OF MADEIRA and JOHN DOE Nos. 1 TO 10 to retaliate against DOUG OPPENHEIMER for the exercise of his First Amendment rights of freedom of speech, freedom to petition government for redress of

grievances, freedom of association and freedom of the press, and to further intimidate him in the exercise of such First Amendment rights, together with incurring the attended expenses of defending the *Vexatious Litigation Lawsuit*.

**FIRST CAUSE OF ACTION**
**(Deprivation of Civil Rights, 42 U.S.C. § 1983)**

99.   Plaintiff incorporates by reference all of the foregoing paragraphs as if fully restated herein.

100.  The foregoing conduct constitutes the policy, practice or custom of the CITY OF MADEIRA.

101.  The foregoing conduct constitutes the execution of the policy, practice or custom of the CITY OF MADEIRA.

102.  The foregoing conduct was undertaken by and/or at the direction or authorization of one or more JOHN DOE Nos. 1 to 10 who have final policymaking authority for the CITY OF MADEIRA.

103.  DOUG OPPENHEIMER has engaged in speech or an act that was constitutionally protected by the First Amendment, including freedom of speech, freedom of the press, freedom of association, and the right to petition the government for the redress of grievances.

104.  The conduct and actions of the CITY OF MADEIRA and/or JOHN DOE Nos. 1 to 10 constitute retaliatory conduct against DOUG OPPENHEIMER for the exercise of his First Amendment rights

105.  The retaliatory conduct of the CITY OF MADEIRA and/or JOHN DOE Nos. 1 to 10 has adversely affected DOUG OPPENHEIMER causing him to temper or stifle certain First Amendment speech or activities.

106.  Furthermore, the retaliatory conduct of the CITY OF MADEIRA and/or JOHN DOE

Nos. 1 to 10 is of such a nature that it would likely deter a person of ordinary firmness in the exercise of his First Amendment rights.

107.  As a direct and proximate result of the actions by the CITY OF MADEIRA and/or JOHN DOE Nos. 1 to 10, DOUG OPPENHEIMER has suffered injury and damages, including, without limitation, incurring legal fees and expenses in order to defend against the retaliatory lawsuit that is the *Vexatious Litigation Lawsuit*, as well as incurring impairment of reputation, emotional distress, disparagement and/or humiliation.

### SECOND CAUSE OF ACTION
### (Declaratory Judgment, 28 U.S.C. § 2201)

108.  Plaintiff incorporates by reference all of the foregoing paragraphs as if fully restated herein.

109.  While the vexatious litigator statute, Ohio Rev. Code § 2323.52, has been found to be facially constitutional, in the context in which the CITY OF MADEIRA has attempted to apply it against DOUG OPPENHEIMER in the *Vexatious Litigation Lawsuit*, *i.e.*, when a vexatious-litigator action is filed by a government or public official against critics, Ohio Rev. Code § 2323.52 is unconstitutional as applied.

110.  In *New York Times v. Sullivan*, 376 U.S. 254, 268 (1964), the United States Supreme Court couched the issue before it as:

> The question before us is whether [the state] rule of liability, as applied to an action brought by a public official against critics of his official conduct, abridges the freedom of speech and of the press that is guaranteed by the First and Fourteenth Amendments.

111.  As the CITY OF MADEIRA is seeking to apply Ohio Rev. Code § 2323.52 in the context of the *Vexatious Litigator Lawsuit*, the same constitutional question as before the Supreme Court in *New York Times* is directly implicated, *i.e.*, whether the state rule of designating a person

a vexatious litigator, as applied to an action by a government or public official against critics, abridges the First and Fourteenth Amendment.

112.    While the Supreme Court in *New York Times* recognized that libelous statements were not entitled to constitutional protection, such a proposition "[did] not foreclose [the Court's] inquiry here." *Id.*  Instead, the Court proceeded to explain that:

> In deciding the question now, we are compelled by neither precedent nor policy to give any more weight to the epithet "libel" than we have to other "mere labels" of state law. Like insurrection, contempt, advocacy of unlawful acts, breach of the peace, obscenity, solicitation of legal business,  and the various other formulae for the repression of expression that have been challenged in this Court, libel can claim no talismanic immunity from constitutional limitations. It must be measured by standards that satisfy the First Amendment.

*Id.* at 269 (internal citation and footnotes omitted).

113.    Similarly, the "other 'mere label' of state law", such as "vexatious litigator", does not save Ohio Rev. Code § 2323.52 from the need to satisfy First Amendment standards in the context when at least one of the underlying alleged instances of vexatious conduct challenged or criticized governmental actions or when it is the government or a public official seeking to have a critic designated as a vexatious litigator.

114.    Thus, when civil actions implicate the exercise of First Amendment rights, the Supreme Court in *New York Times* recognized a higher evidentiary standard:

> A rule compelling the critic of official conduct to guarantee the truth of all his factual assertions…leads to a comparable "self-censorship." Allowance of the defense of truth, with the burden of proving it on the defendant, does not mean that only false speech will be deterred.…  Under such a rule, would-be critics of official conduct may be deterred from voicing their criticism, even though it is believed to be true and even though it is, in fact, true, because of doubt whether it can be proved in court or fear of the expense of having to do so. They tend to make only statements which "steer far wider of the unlawful zone."  The rule thus dampens the vigor and limits the variety of public debate.  It is inconsistent with the First and Fourteenth Amendments.

*Id.* at 279.

115.    As a result, when state civil causes of action brought by governments or public officials threaten constitutional rights (or are based upon prior civil actions challenging such governments or public officials), the United States Supreme Court has declared the First Amendment requires the demonstration of "actual malice" before recovery may be allowed.  *Id.* at 280-81.

116.    Ohio Rev. Code § 2323.52 does not contain an actual malice standard, *i.e.*, that the putative vexatious litigator knew or was reckless with regard to whether he was engaging in vexatious conduct, when at least one of the underlying alleged instances of vexatious conduct challenged or criticized governmental actions or when it is the government or a public official seeking to have a critic designated as a vexatious litigator.

117.    Accordingly, as applied in instances when at least one of the underlying alleged instances of vexatious conduct challenged or criticized governmental actions or when it is the government or a public official seeking to have a critic designated as a vexatious litigator, Ohio Rev. Code § 2323.52 is unconstitutional as violative of the First Amendment and the pronouncement of *New York Times*.

118.    Plaintiff is entitled to a declaratory judgment declaring Ohio Rev. Code § 2323.52 unconstitutional as applied to him, *i.e.*, in the context of an action brought pursuant to Ohio Rev. Code § 2323.52 when at least one of the underlying alleged instances of vexatious conduct challenged or criticized governmental actions or when it is the government or a public official seeking to have a critic designated as a vexatious litigator.

WHEREFORE, Plaintiff prays that the Court enter judgment in their favor and against the Defendants as follows:

a.   awarding compensatory damages of at least nominal damages against all Defendants in an amount to be determined at trial;

b.   issue a declaratory judgment that Ohio Rev. Code § 2323.52 is unconstitutional when applied in the context of an action brought pursuant to Ohio Rev. Code § 2323.52 when at least one of the underlying alleged instances of alleged vexatious conduct challenged or criticized governmental actions or when it is the government or a public official seeking to have a critic designated as a vexatious litigator

c.   awarding Plaintiff his attorney fees and costs pursuant to 42 U.S.C. §1988; and

d.   granting any other relief to which Plaintiff may be entitled in law or in equity

Respectfully submitted,

  /s/ Curt C. Hartman
Curt C. Hartman
The Law Firm of Curt C. Hartman
7394 Ridgepoint Drive, Suite 8
Cincinnati, OH  45230
(513) 379-2923
*hartmanlawfirm@fuse.net*

Christopher P. Finney
Brian C. Shrive
Finney Law Firm LLC
4270 Ivy Pointe Blvd., Suite 225
Cincinnati, OH  45245
(513) 943-6650
*chris@finneylawfirm.com*
*brian@finneylawfirm.com*

*Attorneys for Plaintiff Doug Oppenheimer*